UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NEXT MODULAR, LLC,

    Plaintiff,

v.

QADREE R. HOLMES, Trustee of the
Qadree R. Holmes Trust, et al.,

    Defendants.
_____/

Case No. 1:22-cv-421

Hon. Hala Y. Jarbou

## **AMENDED OPINION**

Plaintiff Next Modular, LLC brings this suit against Qadree R. Holmes and Troy W. Holmes, each as trustee of their respective trusts, for breach of contract and unjust enrichment. Defendants bring counterclaims against Plaintiff for breach of contract and to quiet title. Before the Court is Plaintiff's motion for summary judgment (ECF No. 29) as well as Defendant's motion for partial summary judgment (ECF No. 32). For the reasons stated below, the Court will grant in part and deny in part both motions.

### **I. FACTUAL BACKGROUND**

On August 31, 2020, Plaintiff and Defendants entered into a contract (the "Construction Contract") whereby Plaintiff agreed to build and Defendants agreed to buy a home located at 80 Pershing Street in South Haven, Michigan. (*See* Constr. Contract, ECF No. 34-1, PageID.259.) The Construction Contract sets a base price of $111,895.00. (*Id.*, PageID.260.) However,

> [a]ny and all site work apart from the factory-built modular home structure is not calculated into the above price, and shall be detailed in the attached document titled "SITE WORK SPECIFICATIONS – APPENDIX B," including all estimated costs regarding the same. Buyer understands and agrees that all site work detailed in Appendix B is subject to final bid, and agrees to pay for all costs arising from

> Builder's efforts to coordinate for the completion of this work, which shall be detailed in Appendix B.

(*Id.*)  The following provisions in the Construction Contract are also relevant to this dispute:

> **SITE WORK ESTIMATES AND MANAGEMENT FEES:** "Site Work" shall refer to any work on the property, listed on "Appendix B" of this contract, that is completed by Subcontractors and coordinated by Builder. "Site Work Management Fees" shall refer to Builder markup and profits assigned to the site work. Buyer understands and agrees that any representation from Builder of expected costs regarding any subcontracted site work is subject to final bid.  Any change orders to the scope of work detailed on Appendix B shall be detailed on a written change order, including applicable Site Work Management fees and must be approved in writing by the Buyer.
>
> . . .
>
> **SUBCONTRACTORS:** For the purpose of coordinating the work listed under "SITE WORK SPECIFICATIONS – APPENDIX B" Builder shall, using Builder's best judgment, procure material and equipment and enter into contracts with various Subcontractors in order to cause this work to be completed. At any time Buyer shall have the right to procure, review, request changes to or reject any: 1) Subcontractor or laborer that Builder deems sufficient to complete the required work, 2) estimate or quote from any Subcontractor or laborer for completion of the work, or 3) equipment or materials purchased, delivered, or installed on the property, with the understanding that Buyer shall be wholly responsible for any costs incurred as a result. If Buyer rejects Builder's Subcontractor or laborer then **Builder shall not be liable for errors, omissions or negligence by any Subcontractor that w[as] not chosen by the Builder**.
>
> **CHANGE ORDERS:** Any changes to this contract must be in writing and executed by all parties to the contract . . . .

(*Id.* (emphasis in original).)  Appendix B to the Construction Contract lists the estimated charges for site work including, for example, the cost of electric, flooring, appliances, tree removal, landscaping, and a garage.  (*Id.*, PageID.273.)  It further states that

> [i]t is understood by all parties that these estimates are subject to final bid. Buyer shall be responsible for any and all monetary liabilities that arise from Builder's efforts to complete the specific above noted tasks in [a] good faith effort to complete Builder's responsibilities arising from the execution of this contract.

(*Id.*)

2

The Construction Contract estimated that the total cost of the home—including the home itself, options and upgrades, site work, and a contingency allowance—would be $303,072.00. (*Id.*, PageID.279.)

In 2022, Plaintiff informed Defendants that the total cost of the home was now $321,313.70. (Comino Statements, ECF No. 32-3, PageID.236.) This new total includes the entirety of the $22,450.00 contingency allowance as well as $18,241.70 in project overage. (*Id.*) Plaintiff's owner, Joel Comino, explained that the price increased as a result of an "unprecedented spike in the construction material and labor markets" that affected the cost of the site work. (2/21/2022 Comino Email, ECF No. 32-8, PageID.243.)

Defendants previously paid $199,117.00 of that total amount, and Plaintiff filed this lawsuit seeking the remainder, $122,196.70. (*Id.*) However, Defendants dispute the validity of this remaining amount. Defendants believe that Plaintiff improperly increased the amount owed for the site work and, thus, is only entitled to $94,606.00.

On February 24, 2023, the parties entered into a partial settlement agreement ("Settlement Agreement"). Under the Settlement Agreement, Defendants agreed to pay $94,606.00, or the amount that is not disputed between the parties. (Settlement Agreement, ECF No. 35, PageID.286.)[1] Accordingly, it appears that the amount remaining in dispute is $27,590.70, or $122,196.70 if Defendants have yet to abide by the Settlement Agreement.[2]

---

[1] Plaintiff filed an affidavit from Joel Comino. (*See* Comino Aff., ECF No. 31-1.) In this affidavit, Comino avers that Plaintiff is still owed the entire $122,196.70, meaning Defendants have yet to pay the amount listed in the Settlement Agreement. The Local Rules require all affidavits filed in support of or in opposition to a motion "bear a scanned image of all original manuscript signatures." L.Civ.R. 5.6(d)(iii). Comino's affidavit lacks a manuscript signature. Accordingly, the Court will not consider it as evidence when ruling on the pending motions.

[2] Defendants argue that the amount in dispute is actually $23,091.70. Defendants arrived at this number by adding the contingency allowance ($22,450.00) to the project overage ($18,241.70) and then subtracting the alleged total amount of five separate charge orders ($17,600.00). However, Defendants have only provided the Court with one charge order for $2,400.00. (*See* Charge Order, ECF No. 32-5.) Without more evidence, the Court cannot discern

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact is genuinely disputed when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249 (citing *First Nat'l Bank of Ariz. v. City Serv. Co.*, 391 U.S. 253, 288-89 (1961)). Summary judgment is not an opportunity for the Court to resolve factual disputes. *Id.* The Court "must shy away from weighing the evidence and instead view all the facts in the light most favorable to the nonmoving party and draw all justifiable inferences in their favor." *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 410 (6th Cir. 2021).

"This standard of review remains the same for reviewing cross-motions for summary judgment." *Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 411 (6th Cir. 2021). "[A] case involving cross-motions for summary judgment requires 'evaluat[ing] each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" *Id.* at 442 (quoting *EMW Women's Surgical Ctr., P.S.C. v. Beshear*, 920 F.3d 421, 425 (6th Cir. 2019)).

## III. ANALYSIS

Plaintiff filed this lawsuit alleging breach of contract and unjust enrichment as a result of Defendants' failure to pay the new total amount. Plaintiff seeks the remaining balance plus liquidated damages and attorney's fees pursuant to the Construction Contract. (*See* Am. Compl., ECF No. 7.) Plaintiff moves for summary judgment on both claims. Defendants bring

---

whether Defendants' calculations have any merit. Thus, the Court will instead rely on the amounts listed in the Settlement Agreement, which has been signed and executed by both parties.

4

counterclaims against Plaintiff for breach of contract and to quiet title. (*See* Answer & Countercls., ECF No. 10.) Defendants move for partial summary judgment as it relates to Plaintiff's claims for breach of contract and unjust enrichment as well as Defendant's own claim for breach of contract. The Court will address each claim separately.

### A. Plaintiff's Breach of Contract Claim

"To recover for breach of contract under Michigan law, a plaintiff must [demonstrate]: (1) the existence of a contract; (2) the terms of the contract; (3) that the defendant breached the contract; and (4) that the breach caused the plaintiff's injury." *Derbabian v. Bank of Am., N.A.*, 587 F. App'x 949, 953 (6th Cir. 2014) (citing *Webster v. Edward D. Jones & Co., L.P.*, 197 F.3d 815, 819 (6th Cir. 1999)). Only the third element, the existence of a breach, appears to be in dispute between the parties.

Whether Defendants breached the Construction Contract requires the Court to interpret the contract itself. Plaintiff argues that Defendants breached the contract because they have yet to pay the new total amount. (*See* Constr. Contract, PageID.260 ("The Buyer agrees to make any outstanding payments arising from the execution of this contract within 15 (fifteen) days of substantial completion of Builder's obligations as detailed in this contract.").) But Plaintiff's argument turns on whether the Construction Contract requires Plaintiff to obtain a change order before altering the original estimated total amount. Defendants argue that the parties had to execute a change order for Plaintiff to charge more than the amounts set forth in Appendix B. If the contract requires Plaintiff to execute a change order and Plaintiff did not do so, then Defendants did not breach the contract by refusing to pay an amount that exceeds the original estimated total.

The Construction Contract is governed by Michigan law. (*Id.*, PageID.270 ("This Contract, all addenda, the application or interpretation thereof, shall be governed exclusively by its terms and by the laws of the State of Michigan.").) "Under Michigan law, the proper interpretation of a

5

contract is a question of law." *Wolverine World Wide, Inc. v. Wolverine Canada, Inc.*, 653 F. Supp. 2d 747, 770 (W.D. Mich. 2009) (citing *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007)). Accordingly, "[t]he question of whether a contract provision is clear or ambiguous is a question of law." *Id.* (citing *Port Huron Ed. Ass'n v. Port Huron Area Sch. Dist.*, 550 N.W.2d 228, 237 (Mich. 1996)).

"'Absent an ambiguity or internal inconsistency, contractual interpretation begins and ends with the actual words of a written agreement. When interpreting a contract, [the Court's] primary obligation is to give effect to the parties' intention at the time they entered into the contract. To do so, [the Court] must examine the language of the contract according to its plain and ordinary meaning.'" *Cnty. of Ingham v. Mich. Cnty. Rd. Comm'n Self-Ins. Pool*, 975 N.W.2d 826, 834 (Mich. 2021) (quoting *Innovation Ventures v. Liquid Mfg.*, 885 N.W.2d 861, 870 (Mich. 2016)). "A fundamental tenant of [Michigan's] jurisprudence is that unambiguous contracts are not open to judicial construction and must be *enforced* as written." *Rory v. Cont'l Ins. Co.*, 703 N.W.2d 23, 30 (Mich. 2004); *see also McDonald v. Farm Bureau Ins. Co.*, 747 N.W.2d 811, 817 (Mich. 2008) (affirming the same principle).

"'However, if the contractual language is ambiguous, extrinsic evidence can be presented to determine the intent of the parties.'" *Kendzierski v. Macomb Cnty.*, 931 N.W.2d 604, 612 (Mich. 2019) (quoting *In re Smith Trust*, 745 N.W.2d 754, 758 (Mich. 2008)). "'A contractual term is ambiguous on its face only if it is equally susceptible to more than a single meaning.'" *Id.* (quoting *Barton-Spencer v. Farm Bureau Life Ins. Co. of Mich.*, 892 N.W.2d 794, 798 (Mich. 2017)). And "it is well settled that the meaning of an ambiguous contract is a question of fact that must be decided by the jury." *Klapp v. United Ins. Grp. Agency, Inc.*, 663 N.W.2d 447, 453-54 (Mich. 2003) (citing *Hewett Grocery Co. v. Biddle Purchasing Co.*, 286 N.W.2d 221, 226 (Mich. 1939)).

6

The relevant provisions of the Construction Contract are under the "Contract Price," "Site Work Estimates and Management Fees," "Subcontractors," and "Change Orders" provisions as well as in Appendix B.  The plain and ordinary meaning of these provisions is unambiguous—Plaintiff is not required to obtain a change order for site work that exceeds the costs detailed in Appendix B.

First, the relevant provisions repeatedly state that the costs listed in Appendix B are *estimated* costs of the site work, not final costs.  The "Contract Price" section reads:

> Buyer understands and agrees that all site work detailed in Appendix B is subject to final bid, and agrees to pay for all costs arising from Builder's efforts to coordinate for the completion of this work, which shall be detailed in Appendix B.

(Constr. Cont., PageID.260.)  The "Site Work Estimates and Management Fees" section reiterates the same:

> Buyer understands and agrees that any representation from Builder of expected costs regarding any subcontracted site work is subject to final bid.

(*Id.*)  And Appendix B itself states:

> It is understood by all parties that these estimates are subject to final bid. Buyer shall be responsible for any and all monetary liabilities that arise from Builder's efforts to complete the specific above noted tasks in good faith effort to complete Builder's responsibilities arising from the execution of this contract.

(*Id.*, PageID.273.)  Accordingly, the contract makes clear that the site work estimates outlined in Appendix B are subject to final bid, and the actual amounts due at the completion of construction could vary from the estimated amounts.

Moreover, as it relates to site work, the contract only requires change orders when Plaintiff seeks to change the scope of the site work.  The "Change Orders" section requires that any changes to the contract be in writing and executed by both parties.  However, the "Site Work Estimates and Management Fees" section clarifies that,

> [a]ny change orders *to the scope of work* detailed on Appendix B shall be detailed on a written change order, including applicable Site Work Management fees and must be approved in writing by the Buyer.

(*Id.*, PageID.260 (emphasis added).) Accordingly, a change order is only required when changing the *scope of work* detailed in Appendix B, not when changing the estimated price.

Finally, adopting Defendants' proposed interpretation of the contract would render Defendants' rights in the "Subcontractors" section superfluous. In this section, Defendants retain

> the right to procure, review, request any changes to or reject any: 1) Subcontractor or laborer that Builder deems sufficient to complete the required work, 2) estimate or quote from any Subcontractor or laborer for completion of the work, or 3) equipment or materials purchased, delivered, or installed on the property, with the understanding that Buyer shall be wholly responsible for any costs incurred as a result.

(*Id.*, PageID.261.) The Court must "give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory." *Klapp*, 663 N.W.2d at 468. If the contract required Plaintiff to execute a written change order subject to Defendants' approval for any changes in price to the site work, then Defendants' rights outlined above would be unnecessary—they would already have final approval over the site work. The Court declines to interpret the contract this way. Rather than requiring Plaintiff to obtain Defendants' approval for price changes via a change order, the contract grants Defendants the right to procure, review, and request changes to estimates for the price of the site work.

In sum, the contract does not require Plaintiff to execute change orders for changes to the estimated price of site work. Therefore, Defendants owe Plaintiff the new total amount and have breached the contract by not paying it. Plaintiff is entitled to summary judgment on its breach of contract claim.

However, based on the current briefing, the Court cannot discern the amount of damages to be awarded. For example, Plaintiff alleges that a balance of $122,196.70 remains outstanding

8

on the new total. Under the Settlement Agreement, Defendants agreed to pay $94,606.00. However, it is not clear whether Defendants have yet paid this amount. Plaintiff also seeks liquidated damages and attorney's fees in accordance with the contract, but Plaintiff provides the Court with little information from which to calculate its attorney's fees.

### B. Plaintiff's Unjust Enrichment Claim

"Establishing an unjust enrichment claim under Michigan law requires '(1) the defendant's receipt of a benefit from the plaintiff and (2) an inequity to [the] plaintiff as a result.'" *Oldnar Corp. v. Panasonic Corp. of N. Am.*, 776 F. App'x 225, 265 (6th Cir. 2019) (quoting *AFT Mich. v. Michigan*, 846 N.W.2d 583, 590 (Mich. 2014)). However, "[i]f there is a valid enforceable contract 'between the same parties on the same subject matter,' a plaintiff may not recover under a theory of unjust enrichment." *Id.* at 265-66 (quoting *Landstar Express Am., Inc. v. Nexteer Auto. Corp.*, 900 N.W.2d 650, 656 (Mich. Ct. App. 2017)). In other words, "'[w]here the parties have an enforceable contract and merely dispute its terms, scope, or effect, one party cannot recover for promissory estoppel and unjust enrichment.'" *Id.* (quoting *Terry Barr Sales Agency, Inc. v. All-Lock Co.*, 96 F.3d 174, 181 (6th Cir. 1996)).

The Construction Contract is an enforceable contract between the two parties and the dispute at issue concerns the meaning or effect of its terms. Plaintiff cannot recover under a theory of unjust enrichment, which requires implying a contract in law, while an express contract already exists. Accordingly, Defendants are entitled to summary judgment on Plaintiff's unjust enrichment claim.

### C. Defendants' Breach of Contract Counterclaim

Defendants bring a counterclaim against Plaintiff for breach of contract. Defendants allege that Plaintiff failed to deliver the property free of defects and failed to meet the substantial completion deadline as outlined in the Construction Contract.

As an initial matter, Defendants fail to cite the portion of the Construction Contract that Plaintiff allegedly breached for failing to deliver the property free of defects.  Defendants also provide no evidence demonstrating that any defects existed.  In their brief in support of their motion, Defendants provide a list of defects with the alleged cost to repair them.  (*See* Defs.' Br. in Supp. of Mot. for Summ. J., ECF No. 32, PageID.198.)  But a list of defects and costs in a brief is not evidence the Court can consider on summary judgment.  Defendants provide no actual evidence demonstrating that these defects exist, that Defendants paid these amounts to cure these defects, or that Plaintiff improperly billed Defendants for these defects.[3]

As it relates to the completion deadline, the contract provides that

> [t]he work to be performed under the contract is estimated to be substantially completed 12 (twelve) weeks after the home is set on the foundation. "Substantially [C]ompleted" or "Substantial Completion" shall be defined as: less than 10% of the dollar value of the contracted works remains to be completed, whether invoiced to Buyer or not . . . . The Builder therefore agrees that, if Substantial Completion is not achieved within the time frame provided herein, the Builder shall pay the Buyer, as liquidated damages and not as a penalty, the sum of $25.00 for each day Substantial Completion exceeds the substantial completion deadline . . . .

(Constr. Contract, PageID.262-263.)

Defendants again fail to provide the Court with sufficient evidence to determine whether Plaintiff breached this provision.  Defendants point to a transaction report that lists the costs Plaintiff incurred while building the home.  (*See* Transaction Rep., ECF No. 32-2.)  Based on this report, Defendants argue that on November 17, 2021, 90% of the dollar value of the contract had been incurred.  (Defs.' Br. in Supp. of Mot. for Summ. J, PageID.199.)  In other words, according

---

[3] Defendants' list of defects includes: (1) the cost to correct the downspouts and/or gutters; (2) the cost to correct breakers above fireplace; (3) the cost for storage rental; (4) the cost for lock for the storage unit; and (5) the cost for exterior lights for the garage.  (*See* Defs.' Br. in Supp. of Mot. for Summ. J., PageID.198.)  Comino testified that he agreed not to charge Defendants for the exterior light charges and the price of the lock for the storage unit as well as to split the cost of the storage rental.  (Comino Dep., ECF No. 32-4, PageID.238.)  However, this evidence neither demonstrates that Plaintiff breached the Construction Contract nor does it establish the exact amount Plaintiff would be liable for.

to Defendants, the home was substantially completed on November 17, 2021. But Defendants provide no evidence as to what day the home was set on the foundation. The contract provides that the home must be substantially completed within 12 weeks of the home being set on the foundation. Without this date, the Court cannot discern whether Plaintiff met the completion deadline.

In sum, Defendants have not met their burden of demonstrating that there is no genuine dispute of material fact as to their breach of contract counterclaim. The Court will deny summary judgment to Defendants on this claim.

## IV. CONCLUSION

For the reasons stated above, the Court will grant in part and deny in part both parties' motions. The Court will grant summary judgment to Plaintiff on its breach of contract claim and to Defendants on Plaintiff's unjust enrichment claim. As it relates to Plaintiff's breach of contract claim, the Court concludes as a matter of law that Defendants breached the Construction Contract. However, the amount of damages remains to be resolved. The Court will also deny summary judgment to Defendants on their counterclaim for breach of contract.

An order will enter in accordance with this Opinion.

Dated: August 23, 2023 /s/ Hala Y. Jarbou
HALA Y. JARBOU
CHIEF UNITED STATES DISTRICT JUDGE